[No. 57591-6. En Banc. April 16, 1992.]

THE CITY OF TACOMA, *Respondent*, v. JOHN LUVENE, *Petitioner.*

*Dino G. Sepe* of *Department of Assigned Counsel*, for petitioner.

*William J. Barker, City Attorney*, and *Cheryl F. Carlson, Assistant*, for respondent.

*Sheryl Gordon McCloud* on behalf of Washington Association of Criminal Defense Lawyers and the American Civil Liberties Union, amici curiae for petitioner.

*Richard A. White, Andrew N. Vollmer, Gary B. Born, Robert F. Hoyt, Roger Conner,* and *Robert Teir* on behalf of American Alliance for Rights and Responsibilities and Together! Thurston Communities for a Drug Free Youth, amici curiae.

*Mark H. Sidran, City Attorney,* and *Richard Greene, Assistant,* on behalf of the City of Seattle, amicus curiae for respondent.

*John W. Ladenburg, Prosecuting Attorney for Pierce County,* and *Chris Quinn-Brintnall, Senior Appellate Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae for respondent.

UTTER, J. — This is an appeal from a criminal conviction for drug loitering. Petitioner John Luvene seeks review of his conviction for drug loitering under Tacoma Municipal Code (TMC) 8.72.010. He challenges the ordinance as being unconstitutionally overbroad and vague, as well as challenging the sufficiency of the evidence to convict him of the crime of drug loitering. Finally, he claims the Tacoma ordinance is unconstitutional as being preempted by RCW 69.50.608. As construed, we find the Tacoma drug loitering ordinance to be both constitutional and not preempted by state law. The conviction is affirmed.

I

At 8:09 p.m. on Friday, August 26, 1988, a Tacoma police officer was near the intersection of 14th and "J" Streets in Tacoma. The Tacoma Police Department had received phone calls and complaints from citizens who lived in that area about persons flagging down vehicles and pedestrians to make drug deals.

From a distance of about 30 feet, the officer watched three men in their mid-twenties standing on the southeast

corner of 14th and "J" Streets. They were pacing two to three steps in all directions and continually surveying their surroundings. Petitioner was one of the three. The police officer did not know the petitioner.

The men stood in the middle of the intersection waving at and trying to flag down vehicles, several of which stopped. Luvene flagged down a car and then, with a wave of his arm, beckoned one of his companions to come over to the stopped car. Once the car stopped, Luvene ran up to it and then again waved for this same man to come over. As the man walked to the stopped car, the police officer saw him reach into his pants pocket and pull out a clear plastic bag containing what appeared to be 10 or more pieces of rock cocaine. Upon entering the passenger's seat, this companion of Luvene's gave the driver what appeared to be some of the rock cocaine and the driver gave him paper money. During this transaction, Luvene was standing next to his companion watching the transaction and surveying the street scene. A short time after this transaction the police saw Luvene walking on the sidewalk with someone who appeared to be smoking a crack pipe.

At approximately 8:50 p.m., a car arrived at the intersection, sounded its horn, and stopped to converse with a number of persons at the intersection, including the petitioner. After the car pulled out of the intersection, the police observed the driver making exchanges with a number of persons. At this time the police officers approached and arrested five persons, including Luvene, for drug loitering. Luvene was given *Miranda* warnings. A pipe of glass tubing, commonly used to smoke crack cocaine, was found on one of the persons arrested. The car contained a plastic bag of white powder and two additional glass tube pipes. No drugs or drug paraphernalia were found on Luvene.

Luvene raised his overbreadth and vagueness challenges in a motion to dismiss the charges, which was denied by the Tacoma Municipal Court on October 21, 1988. Luvene stipulated to the facts contained in the police report and was found guilty of drug loitering.

Luvene filed a notice of appeal to the Pierce County Superior Court pursuant to RALJ 2.4(c) and 2.6. On September 21, 1990, the Pierce County Superior Court held that the drug loitering ordinance was not overbroad or vague and affirmed Luvene's conviction. The judge's memorandum decision indicates he declined to consider the petitioner's claim that the Tacoma drug loitering ordinance was facially overbroad. This denial was based on the theory that petitioner lacked standing because his conduct fell within the valid reach of the ordinance.

Luvene then sought direct review of the superior court decision under RAP 4.2(a)(4). Because this case raises fundamental and urgent issues of broad public import, we accepted review.

## II

Luvene argues that Tacoma's drug loitering ordinance is preempted by various statutes dealing with controlled substances. *See* RCW 69.50.608. He suggests that the Tacoma ordinance and sections of RCW 69.50 prohibit the same conduct but that the Tacoma ordinance punishes this conduct as a misdemeanor while RCW 69.50.401 through .410 punish this conduct as a felony. This conflict of the penalty provisions, petitioner argues, requires that the Tacoma ordinance be preempted by the state controlled substance statutes.

## A

Neither the petitioner nor respondent in this case argued the preemption issue. Rather, this issue was raised and briefed by amicus. Respondent City of Tacoma has argued that these circumstances preclude this court from addressing the preemption issue.

While we ordinarily only consider issues that have been raised by the parties, there are exceptions. *Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied*, 411 U.S. 983 (1973). It is proper to do so when there is no dispute about the law to be applied. *See Alverado v. WPPSS*,

111 Wn.2d 424, 429-30, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004 (1989).

The preemption doctrine of Const. art. 11, § 11 is a well-settled area of law. *See Brown v. Yakima*, 116 Wn.2d 556, 807 P.2d 353 (1991). The parties here do not raise questions about the effect or contours of the preemption doctrine itself. Rather, they raise questions about its application to the Tacoma drug loitering ordinance.

Many local governments have enacted similar drug loitering ordinances, and this issue will frequently come before the court. The fact that the issue here concerns an application of the preemption doctrine rather than a dispute over its substantive principles makes it appropriate to consider the preemption question presented in this case.

### B

■ Under Const. art. 11, § 11, cities have the right to enact ordinances prohibiting the same acts prohibited by state law so long as the state enactment was not intended to be exclusive and the city ordinance does not conflict with the general law of the state. *See Brown*, at 559. An ordinance must yield to a statute on the same subject on either of two grounds: if the statute preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists between the two that cannot be harmonized. *Brown*, at 559.

■ Preemption occurs when the Legislature states its intention expressly, or by necessary implication, to preempt the field. *Brown*. There is here no expressly stated intention to preempt the field. In such situations:

[T]he court may look to the purposes of the statute and to the facts and circumstances upon which the statute was intended to operate. If, however, the Legislature "affirmatively expresses its intent, either to occupy the field or to accord concurrent jurisdiction, there is no room for doubt."

(Citations omitted.) *Brown*, at 560 (quoting *Lenci v. Seattle*, 63 Wn.2d 664, 670, 388 P.2d 926 (1964)).

■ Tacoma contends that RCW 69.50.608 expresses the Legislature's intent to allow a measure of concurrent juris-

diction in the field of criminalizing drug-related activity. The statute states:

> The state of Washington fully occupies and preempts the entire field of setting penalties for violations of the controlled substances act. Cities, towns, and counties . . . may enact only those laws and ordinances relating to controlled substances that are consistent with this chapter. Such local ordinances shall have the same penalties as provided for by state law. Local laws and ordinances that are inconsistent with the requirements of state law shall not be enacted and are preempted . . ..

RCW 69.50.608. While the statute expressly preempts the field of setting penalties for violations of the Uniform Controlled Substances Act[1] (hereinafter UCSA), it nonetheless expressly contemplates the existence of "ordinances relating to controlled substances that are consistent" with the UCSA. RCW 69.50.608. No intent to preempt local government authority to enact "ordinances relating to controlled substances" is expressed here inasmuch as the statute expressly grants some measure of concurrent jurisdiction to municipalities. *Brown*, at 560.

Because RCW 69.50.608 grants concurrent jurisdiction to local governments, reliance on the comprehensive nature and structure of the UCSA to show preemption is misplaced. Once an affirmative expression of intent to allow concurrent jurisdiction or, conversely, to occupy the field is shown, arguments based on the necessary implication of statutory language and structure lose their force in the face of the express language of the statute. *Brown*, at 560. Only the setting of penalties for violations of the controlled substance statutes is preempted, not the ability of local governments to criminalize drug-related activity.

■ The next issue is whether there is a conflict with state law. A direct and irreconcilable conflict with a statute violates Const. art. 11, § 11. *Brown*, at 561.

> " ' "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or

---

[1]The Uniform Controlled Substances Act, Laws of 1971, 1st Ex. Sess., ch. 308, is codified in RCW 69.50.

licenses that which the statute forbids and prohibits, and vice versa."

*Bellingham v. Schampera*, 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960) (quoting *Salt Lk. City v. Kusse,* 97 Utah 113, 119, 93 P.2d 671 (1938) (quoting *Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. 519 (1923))). The conflict must be direct and irreconcilable with the statute, and the ordinance must yield to the statute if the two cannot be harmonized. *Brown,* at 560. If the ordinance and statute can be harmonized, then the statute should not be construed as restricting a municipality's power to enact measures relating to controlled substances.

Luvene attempts to show that the Tacoma ordinance prohibits the same conduct as the UCSA. He notes that RCW 69.50.407 prohibits attempts and conspiracies to violate the controlled substance statutes. Thus, he concludes that a violation of the Tacoma ordinance also is an attempt or conspiracy to violate the controlled substance statutes.

The Tacoma ordinance and RCW 69.50.407 do not prohibit the same conduct. While it is theoretically possible that behavior which satisfies the requirements of the controlled substance statutes could also satisfy the requirements of the Tacoma ordinance, the ordinance prohibits only public drug-related activity. One can attempt to violate, conspire to violate, and then violate the controlled substance statutes in the privacy of their own or someone else's home. However, a violation of the Tacoma drug loitering ordinance can only occur in public. Moreover, proof of a controlled substance, its possession, or its delivery is not required under the Tacoma ordinance, just some actions done in public that manifest an intent to engage in illegal drug activity. Because the Tacoma ordinance does not prohibit the same conduct as the controlled substance statutes, no "direct, irreconcilable" conflict with the controlled substance statutes exists. Neither of the two grounds for preemption having been met, the Tacoma ordinance is not preempted by the controlled substance statutes.

## III

Tacoma Municipal Code (TMC) 8.72.010 is the most recent addition to a class of local ordinances that use loitering to help define a criminal offense. TMC 8.72.010(A) states:

It is unlawful for any person to loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity contrary to any of the provisions of Chapters 69.41, 69.50, or 69.52 of the [RCW].

Subsection (B) of the ordinance goes on to list 10 "circumstances which may be considered" to determine if the "purpose" to engage in illegal drug-related activity is "manifested."[2]

---

[2]TMC 8.72.010(B) states:

"Among the circumstances which may be considered in determining whether such purpose is manifested are:

"1. Such person is a known unlawful drug user, possessor, or seller. For purposes of this chapter, a 'known unlawful drug user, possessor, or seller' is a person who has, within the knowledge of the arresting officer, been convicted in any court within this state of any violation involving the use, possession, or sale of any [controlled substance]. . .; or a person who displays physical characteristics of drug intoxication or usage, such as 'needle tracks'; or a person who possesses drug paraphernalia as defined in Section 8.29 of the [Tacoma Municipal Code];

"2. Such person is currently subject to an order prohibiting his/her presence in a high drug activity geographic area;

"3. Such person behaves in such a manner as to raise a reasonable suspicion that he or she is about to engage in or is then engaged in an unlawful drug-related activity, including by way of example only, such person acting as a 'lookout';

"4. Such person is physically identified by the officer as a member of a 'gang,' or association which has as its purpose illegal drug activity;

"5. Such person transfers small objects or packages for currency in a furtive fashion;

"6. Such person takes flight upon the appearance of a police officer;

"7. Such person manifestly endeavors to conceal himself or herself or any object which could reasonably be involved in an unlawful drug-related activity;

"8. The area involved is by public repute known to be an area of unlawful drug use and trafficking;

"9. The premises involved are known to have been reported to law enforcement as a place suspected of drug activity pursuant to [RCW 69.53];

"10. Any vehicle involved is registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding warrant for a crime involving drug-related activity."

While we have not yet had to consider the constitutionality of a drug loitering ordinance, other jurisdictions have considered the vagueness and overbreadth problems of drug loitering ordinances. *Northern Va. Chapter, ACLU v. Alexandria*, 747 F. Supp. 324 (E.D. Va. 1990) (hereafter *ACLU v. Alexandria*); *see also Akron v. Holley*, 55 Ohio Misc. 2d 4, 557 N.E.2d 861 (Mun. Ct. 1989); *People v. Pagnotta*, 25 N.Y.2d 333, 253 N.E.2d 202, 305 N.Y.S.2d 484 (1969). In the past we have been called upon to determine the constitutionality of prostitution loitering measures. *See Seattle v. Slack*, 113 Wn.2d 850, 784 P.2d 494 (1989); *Seattle v. Jones*, 79 Wn.2d 626, 488 P.2d 750 (1971).

■ ■ In the context of vagueness challenges, this court has stressed the importance of the linguistic and structural similarity between the statutory language at issue and the statutory language contained in earlier cases in determining the appropriate precedents. *State v. Smith*, 111 Wn.2d 1, 13, 759 P.2d 372 (1988) (criticism of vagueness decisions that cite cases " 'not dealing with statutes of similar wording or . . . sphere of operation' ") (quoting Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 Pa. L. Rev. 67, 71 (1960-1961)). This consideration applies with equal force to a challenge that a statute or ordinance is too broad.

The prostitution loitering ordinance upheld in *Seattle v. Slack, supra,* stated:

> A person is guilty of prostitution loitering if he or she remains in a public place and intentionally solicits, induces, entices, or procures another to commit prostitution.

(Italics ours.) Seattle Municipal Code (SMC) 12A.10.010(B). The prostitution loitering ordinance we upheld in *Slack*, however, identified remaining in public while soliciting, inducing, enticing, or procuring another person to commit prostitution as the criminal conduct prohibited by the ordinance. *See Slack*, at 856. It also identified a mens rea component, intent. *Slack*, at 855-56. Had the Tacoma ordinance utilized wording and structure similar to that of

the prostitution loitering ordinance we upheld in *Slack*, this case would not present such difficult questions.[3]

The language and structure of the Tacoma drug loitering ordinance also depart from the language and structure of the prostitution loitering ordinance upheld in *Seattle v. Jones, supra.* In *Jones*, the prostitution ordinance that preceded the *Slack* prostitution loitering ordinance was attacked as vague. The ordinance at issue in *Jones* provided:

> It is unlawful for anyone:
>
> . . . .
> . . . [t]o loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution.

*Jones*, at 627 (quoting former Seattle City Code 12.49-.010(g)). The ordinance then went on to identify "circumstances which may be considered in determining whether such purpose is manifested". *Jones*, at 627-28.

Luvene correctly observes that the ordinance at issue here does not have similar language or structure as the Seattle prostitution ordinance at issue in *Slack*.[4] Although the two Seattle prostitution loitering ordinances differ from each other, they actually referred to behavior commonly identified with prostitution. While the language and structure of the Tacoma drug loitering ordinance more closely resembles that of the prostitution loitering ordinance we upheld in *Jones*, the Tacoma ordinance, unlike any other loitering-based ordinance we have upheld, does not on its face refer to the class of actions commonly identified as illegal drug-related conduct.

---

[3]The Seattle drug-traffic loitering ordinance, SMC 12A.20.050, is one such ordinance similarly structured to the Seattle prostitution loitering ordinance upheld in *Slack*.

[4]The key portions of the Tacoma drug loitering ordinance are identical to those of the Akron, Ohio, drug loitering ordinance upheld in *Akron v. Holley, supra. See Akron v. Holley, supra* at 10-11. *Akron v. Holley, supra*, however, is not the opinion of a state appellate court, but only the published memorandum decision of a municipal court from which no appeal was taken.

This linguistic and structural difference lies at the heart of the constitutional challenges in this case. The gravamen of Luvene's vagueness and overbreadth challenges is that the ordinance identifies the actus reus of the prohibited criminal conduct in terms of constitutionally protected conduct. Thus, he argues, the ordinance is impermissibly vague because it fails to identify some overt act in addition to mere loitering, an act which, by itself, cannot be constitutionally punished. As a result, he argues, the ordinance is too indefinite to apprise citizens of the prohibited conduct and to prevent arbitrary and discriminatory law enforcement. He also argues that the ordinance is overbroad because criminal liability for drug loitering is indistinguishable from and in fact defined in terms of constitutionally protected conduct. He concludes that the ordinance thus chills a substantial amount of constitutionally protected conduct.

## A

■ ■ Overbreadth analysis measures how enactments that prohibit conduct fit with the universe of constitutionally protected conduct. *See generally* Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1990-1991). A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. *Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333 (1990), *cert. denied*, 114 L. Ed. 2d 85 (1991); *Seattle v. Slack*, 113 Wn.2d 850, 854, 784 P.2d 494 (1989). The first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Webster*, at 641. Criminal statutes require particular scrutiny and may be facially invalid if they " 'make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.' " *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (upholding Seattle's telephone harassment ordinance) (quoting *Houston v. Hill*, 482 U.S. 451, 459, 96 L. Ed. 2d 398, 410, 107 S. Ct. 2502 (1987)). An ordinance which regulates behavior, and not pure speech, " 'will not be

overturned unless the overbreadth is "both real and substantial in relation to the ordinance's plainly legitimate sweep." ' " *Webster*, at 641 (quoting *Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366 (1988) (quoting *O'Day v. King Cy.*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988))). A statute or ordinance will be overturned only if the court is unable to place a sufficiently limiting construction on a standardless sweep of legislation. *Webster*, at 641.

The threshold inquiry concerns Luvene's standing to attack the ordinance as overbroad on its face. On the basis of his conclusion that petitioner's conduct was within the "hard core" of the ordinance, the superior court judge refused to entertain petitioner's claim that the drug loitering ordinance criminalized constitutionally protected conduct. This was error.

■ Courts will permit third party standing for overbreadth challenges when the law in question chills or burdens constitutionally protected conduct. *See, e.g., ACLU v. Alexandria; Akron v. Holley, supra.* Because of the importance of First Amendment rights an enactment may be invalidated for overbreadth where it would be unconstitutional as applied to others even if not as applied to the litigant. *State v. Motherwell*, 114 Wn.2d 353, 370-71, 788 P.2d 1066 (1990). Here, First Amendment activities are implicated by the Tacoma drug loitering ordinance, including freedom of expressive association and freedom of movement.[5] We do not require others to risk criminal sanction or forgo constitutionally protected conduct. The ordinance can be read as prohibiting loitering done without the intent to commit an illegal act. Moreover, the act of mere loitering is an inherent component of political canvassing and other nonpolitical forms of expressive asso-

---

[5]The First Amendment right of expressive association encompasses association to engage in political and nonpolitical speech. *Dallas v. Stanglin*, 490 U.S. 19, 104 L. Ed. 2d 18, 109 S. Ct. 1591 (1989); *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir. 1990). Moreover, the right to walk, stroll, or wander aimlessly is a liberty "within the sensitive First Amendment area" that is protected by the Fourteenth Amendment. *Papachristou v. Jacksonville*, 405 U.S. 156, 164-65, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972).

ciation. Also unclear from the face of the ordinance is whether or not any conduct typically associated with the buying, selling or use of illegal drugs done in addition to mere loitering is required for the police to arrest someone for drug loitering.

Given the procedural posture of petitioner's overbreadth challenge, his overbreadth claim raises pure questions of law.[6] As commentators have noted, when a person convicted under a criminal statute or ordinance challenges the law as overbroad, he or she essentially asserts that his or her conviction rests on an unconstitutional law. *See* Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853, 856, 874-75 (1990-1991); Monaghan, *Overbreadth*, 1981 Sup. Ct. Rev. 1, 3. In this context no prudential purpose is served by refusing to entertain a claim that an ordinance is overbroad. When First Amendment and other constitutionally protected forms of conduct are chilled or burdened, there is likely to be no other better plaintiff than one who has been convicted under an allegedly unconstitutional measure. Thus, Luvene has standing to raise the claim that the ordinance is overbroad on its face.

## B

Petitioner's overbreadth claim raises two important questions. First, does the ordinance prohibit constitutionally protected activity? Second, if it does prohibit constitutionally protected conduct, does it prohibit a "real and substantial" amount of protected conduct? If possible, an enactment must be interpreted in a manner which upholds its constitutionality. *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971).

Luvene argues that two aspects of the ordinance create overbreadth problems: lack of a clearly identified mens rea component and no requirement that the police observe action in addition to loitering in order for a person to be arrested for drug loitering. With regard to the need for an

---

[6]Petitioner had been convicted of drug loitering when he appealed to the Pierce County Superior Court.

identified mens rea element, petitioner argues that on the face of the ordinance, all that is required for arrest is that the police feel that one is loitering "in a manner and under circumstances manifesting the purpose" to engage in violations of the various controlled substance statutes. With regard to the action in addition to loitering, petitioner argues that while the circumstances section of the ordinance sets out 10 categories of factors that may be considered in determining if the purpose is manifested, only 4 of these circumstances identify any overt act in addition to loitering.[7] These two problems, petitioner concludes, impermissibly extend the reach of the ordinance into the constitutionally protected area of expressive association and freedom of movement.

■■ As a general matter, an ordinance that prohibits loitering may survive an overbreadth challenge if it requires the specific intent to engage in an illicit act. *Slack*, at 855; *ACLU v. Alexandria*, at 326-27. The Tacoma drug loitering ordinance does contain a mens rea component, specifically the "purpose" to engage in drug-related activity. In *Seattle v. Jones, supra,* we construed the word "purpose" in a similar context to require the mental state of intent. *Jones,* at 629. Because of the similar language and context that the Tacoma drug loitering ordinance shares with the *Jones* prostitution loitering ordinance, it is appropriate to transpose that construction of "purpose" from *Jones* to the case now at hand.

Therefore, as construed, we reject the interpretation of the ordinance to prohibit conduct that only appears to be drug related, regardless of the person's actual intent. To be constitutional the ordinance must prohibit loitering while possessing the intent to engage in unlawful drug activity.

---

[7] These include *behaving* in a way that reasonably suggests one is engaging or about to engage in unlawful drug-related activity; furtively *transferring* small objects or packages for money; *fleeing* upon appearance of a police officer; and *concealing* oneself or some object that could reasonably be involved in unlawful drug-related activity. *See* TMC 8.72.010(B)(3), (5)-(7) (quoted in footnote 2).

If the police observe identifiable, articulable conduct in addition to mere loitering that is consistent with the intent to engage in unlawful drug activity, the ordinance is constitutionally valid.

The question Luvene raises — whether an ordinance which fails to require some overt act in addition to mere loitering is overbroad — was not at issue in *Slack*. The prostitution loitering ordinance in *Slack* contained language — the verbs solicit, induce, entice, and procure — which required some action in addition to loitering. The Tacoma ordinance uses the phrase "in a manner and under circumstances manifesting" rather than specifying particular acts that belong to a general category of prohibited conduct. The string of verbs and pronoun "another" that Tacoma edited out of the language approved in *Slack* (and *Jones*) helped to define the universe of prohibited conduct in prostitution loitering ordinances.[8]

Our interpretation of the Tacoma drug loitering ordinance's mens rea component places an overt act requirement in the ordinance and meets the petitioner's criticisms. The use of the word "manifesting" in the ordinance indicates that some overt conduct performed while loitering is necessary to determine if a person has the intent to engage in illegal drug-related activity. While we do not feel that this deletion expands the universe of prohibited conduct that is narrowed by the specific intent requirement, the paring down of the language approved in *Slack* and *Jones* concerns us. Tacoma assumes that subtracting the series of specific acts and "another" from the language of the ordinance in *Jones* makes no difference to the overbreadth analysis. While the potential overbreadth of the ordinance is diminished by the intent requirement, it is critical that the culpable mental state coexist with identifiable, articu-

---

[8]Seattle Municipal Code 12A.10.010(B) provides:

"A person is guilty of prostitution loitering if he or she remains in a public place and intentionally solicits, induces, entices, or procures another to commit prostitution."

lable conduct reasonably consistent with the intent to buy, sell, or use illegal drugs.[9] Otherwise, the ordinance does not distinguish between the innocent intent to merely loiter and the culpable intent to engage in unlawful drug-related activity.

As interpreted and limited, the Tacoma drug loitering ordinance is not unconstitutionally overbroad. By requiring specific intent and overt acts, the ordinance does not then reach into the arena of constitutionally protected First Amendment conduct. It prohibits soliciting, enticing, inducing, or procuring another to exchange, buy, sell, or use illegal drugs or drug paraphernalia.

## IV

A vagueness challenge seeks to vindicate two principles of due process: the need to define prohibited conduct with sufficient specificity to put citizens on notice of what conduct they must avoid, and the need to prevent arbitrary and discriminatory law enforcement. *Seattle v. Webster, supra* at 642-43; *State v. Smith,* 111 Wn.2d 1, 4-5, 759 P.2d 372 (1988). A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability. *Spokane v. Douglass,* 115 Wn.2d 171, 177, 795 P.2d 693 (1990). Impossible standards of specificity are not required. When a municipal ordinance is challenged as facially vague, a duly enacted ordinance is presumed to be constitutional. *Spokane v. Douglass, supra.* Moreover, an

---

[9]We find petitioner's argument to adopt the reasoning of *Coleman v. Richmond,* 5 Va. App. 459, 364 S.E.2d 239 (1988) unpersuasive. The court in *Coleman* found a prostitution loitering ordinance similar to the one in *Seattle v. Jones, supra,* to be overbroad. The *Coleman* court reasoned that the circumstances were sufficient in and of themselves to manifest the intent to engage in prostitution. *ACLU v. Alexandria,* at 327 (citing *Coleman,* at 243). Thus, any person who committed the acts described in the circumstances section was deemed to have the intent to engage in prostitution. *ACLU v. Alexandria,* at 327. We, however, took a different view of the nature of the circumstances section in *Slack,* as we do here also. The circumstances described in subsection (B) of the Tacoma drug loitering ordinance are not sufficient standing alone to manifest the intent to engage in illegal drug-related activity.

enactment is not facially vague if it is susceptible to a constitutional interpretation. *State v. Miller*, 103 Wn.2d 792, 794, 698 P.2d 554 (1985).

## A

■ The threshold inquiry here concerns Luvene's standing to attack the ordinance as facially vague. In the context of civilian society, the United States Supreme Court has allowed a criminal defendant whose conduct fell within the "hard core" of the statute to bring a claim that the statute was facially vague. *Compare Kolender v. Lawson*, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983) (person convicted under Cal. Penal Code § 647(e) had standing to assert that statute is vague on its face) *with Parker v. Levy*, 417 U.S. 733, 756, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974) (military officer convicted under articles 90(a), 133, and 134 of Uniform Code of Military Justice, 10 U.S.C. §§ 801 *et seq.*, had no standing to assert that the articles were vague on their face).[10] Vagueness challenges are chiefly concerned with arbitrary enforcement. *See Kolender*, at 358. From the face of the ordinance it is unclear what actual limits the ordinance places on police discretion. Because subsection (A) of the Tacoma drug loitering ordinance does not identify the types of acts it prohibits, a number of different acts could conceivably satisfy the ordinance's intent requirement.

## B

■ The definiteness prong of the void-for-vagueness doctrine requires that an enactment pass the common intelli-

---

[10]The *Kolender* majority rejected the dissenters' view that a claim of facial vagueness is allowed only when a defendant's conduct falls outside the hard core of the statute. *See Kolender*, at 358 n.8. In footnote 8, the Supreme Court distinguished *Parker v. Levy, supra*, and *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 71 L. Ed. 2d 362, 102 S. Ct. 1186 (1982), two of its precedents relied upon by the dissenters in *Kolender*. Justice O'Connor observed that in *Parker* "we deliberately applied a less stringent vagueness analysis '[b]ecause of the factors differentiating military society from civilian society.'" Justice O'Connor noted that *Hoffman Estates* "reaffirm[ed] the validity of facial challenges in situations where free speech or free association are affected". *Kolender*, at 359; *see Hoffman Estates*, at 494.

gence test. An enactment is void for vagueness if " 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.' " *State v. Smith, supra* at 7 (quoting *State v. White*, 97 Wn.2d 92, 98-99, 640 P.2d 1061 (1982)). Because the Tacoma drug loitering ordinance lacks a phrase comparable to "soliciting, enticing, inducing, or procuring another", Luvene argues that subsection (A) of the Tacoma drug loitering ordinance fails to identify or articulate any prohibited conduct other than mere loitering.

While we find this to be a substantive rather than a merely grammatical difference, we find that the ordinance can be interpreted to prohibit conduct beyond mere loitering. In this context, we read the term "manifesting" as signifying that, while loitering, a person must perform objectively ascertainable, overt conduct that is commonly associated with illegal drug-related activity, such as soliciting, enticing, inducing, or procuring another person to exchange, buy, sell, or use illegal drugs or drug paraphernalia. Furthermore, this conduct, which is in addition to loitering, must be done for the purpose of engaging in illegal drug-related activity.

As thus construed, the ordinance passes the common intelligence test of the vagueness doctrine's definiteness prong. A person of common and ordinary intelligence will be able to read the ordinance and the cases applying it and determine that he or she cannot loiter in public and perform actions commonly associated with the exchange, buying, selling, or use of illegal drugs and drug paraphernalia. This interpretation of the ordinance provides fair warning to those who read the ordinance and the cases interpreting it that such acts violate the Tacoma drug loitering ordinance.

### C

This court's prior decisions do not support Luvene's position that the ordinance does not contain adequate standards to guide law enforcement. The terms defining the standards for a violation must not be " 'inherently subjective in the context in which they are used.' " *Spokane v. Douglass, supra* at 181 (quoting *State v. Worrell*, 111 Wn.2d

537, 544, 761 P.2d 56 (1988)). Prior decisions of this court have upheld enactments against vagueness challenges that allow the police to make a subjective evaluation to determine if a violation has occurred. *See Spokane v. Douglass, supra; State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984) (due process prohibits police officers, judges, and juries from subjectively deciding what conduct complies with a statute in a given case). Also, prior decisions have stated that an intent element in an enactment provides a sufficient limit on police discretion. *E.g., Seattle v. Slack*, 113 Wn.2d 850, 784 P.2d 494 (1989).

As interpreted, the ordinance requires the intent to engage in drug-related activity and an additional overt act besides loitering. See section III(B). The practical effect of this intent requirement is to require the police to observe overt conduct that is consistent with the intent to engage in illegal drug-related activity in addition to mere loitering. With this intent and overt act requirement, the evaluation entrusted to the police by the Tacoma drug loitering ordinance is not inherently subjective. The police evaluation is directed toward those overt actions which manifest the intent to exchange, buy, sell, or use illegal drugs or drug paraphernalia. The police evaluation is based on their observation of articulable, identifiable conduct that is consistent with the buying, selling, and using of illegal drugs, not their personal whim or fancy.

Nevertheless, petitioner argues that the reasoning in *Bellevue v. Miller*, 85 Wn.2d 539, 536 P.2d 603 (1975) applies here. In *Bellevue*, the court struck down an ordinance which prohibited wandering and prowling "in a place, at a time, or in a manner, and under circumstances, which manifest an unlawful purpose". *Bellevue*, at 542. The ordinance also had a list of circumstances evidencing an unlawful purpose. The problem with the ordinance at issue in *Bellevue* was the indefiniteness that flowed from the terms "wandering" and "prowling" and "unlawful". *See Maciolek*, at 267-68. The main vice of the ordinance was not that its indefiniteness failed to give adequate notice of the

prohibited conduct, but that it presented too much potential for arbitrary and discriminatory law enforcement by placing "no actual limitations . . . on the exercise of police discretion." *Bellevue*, at 545. The ordinance permitted arrest on the mere suspicion that a person has been or is likely to become involved in unlawful activity. *Bellevue*, at 546. The Tacoma ordinance does not permit the police to arrest a loiterer on the mere suspicion that he or she has the intent to buy, sell, or use illegal drugs.[11]

The Tacoma drug loitering ordinance is not void for vagueness. It prohibits remaining in public while intentionally soliciting, enticing, inducing, or procuring another person to exchange, sell, buy, or use illegal drugs or drug paraphernalia. The ordinance does have different linguistic and structural characteristics than similar loitering-based ordinances we have upheld in the past. By adding our construction, these differences are not so great that they require us to invalidate the ordinance.[12]

---

[11]As such, *Bellevue v. Miller, supra,* stands for the proposition that the primary concern of the vagueness doctrine is "the lack of effective limits on police discretion." *See, e.g., Kolender v. Lawson, supra.* In *Bellevue*, we essentially determined that the ordinance had no "hard core" because it placed no actual limits on police discretion. It logically follows that an ordinance which fails to give law enforcement sufficiently clear notice of the prohibited conduct does not give the general population notice of the conduct it purports to prohibit. *See generally* Dan-Cohen, *Decision Rules and Conduct Rules: On Acoustic Separation in Criminal Law,* 97 Harv. L. Rev. 625, 648-64 (1984) (analyzing the void-for-vagueness doctrine in terms of a distinction between conduct rules directed toward the population at large and decision rules directed toward a particular professional and legal audience).

However, the reasoning in *Bellevue v. Miller, supra,* should not be read to imply that broadly worded criminal laws with a reasonably definite focus are unconstitutionally vague. We explicitly stated that "where a prohibition is directed to identifiable, articulable conduct . . . the statute or ordinance will be sustained against a void-for-vagueness challenge." (Citations omitted.) *Bellevue,* at 547.

[12]Luvene also argues that the words "gang" and "member" in TMC 8.72-.010(B)(4) are inherently vague. We do not agree. With regard to the vagueness of the word "member", much of the uncertainty associated with this term has been dispelled through court decisions construing the word in other statutory contexts. While the Supreme Court in *Lanzetta v. New Jersey,* 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618 (1939) found the phrase "known to be a member" of a

## V

Luvene contends that the police report alone does not contain sufficient evidence of each element of the crime of drug loitering to sustain his conviction. Luvene did not raise the issue of the sufficiency of the evidence until his petition for review in this court, but this does not preclude consideration of the issue.

 ██ Due process requires that the State prove each element of its criminal case beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). This is a question of constitutional magnitude and can be raised initially on appeal. *Seattle v. Slack, supra* at 859. The accepted test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Little*, 116 Wn.2d 488, 491, 806 P.2d 749 (1991). As construed, a conviction under the ordinance requires proof beyond a reasonable doubt that a person (1) loiter (2) in or

---

gang ambiguous and held the statute at issue to be overbroad, subsequent decisions have resolved the ambiguity associated with the word "member". The Court in *Scales v. United States*, 367 U.S. 203, 223, 6 L. Ed. 2d 782, 81 S. Ct. 1469 (1961) held that a "member" cannot be subjected to criminal liability for the act of the association to which he is a member unless he is an "active" member. *See also Seattle v. Slack, supra* (Seattle prostitution loitering ordinance did not criminalize mere status of being a known prostitute). Thus, active membership requires one to be more than a "nominal, passive, inactive, or purely technical" member. *Scales*, at 254-55 & n.29. Moreover, this interpretation of member makes the ordinance less susceptible to arbitrary enforcement by law enforcement because its practical effect is to require the alleged member to commit some act indicative of "active" membership.

We also do not find the term "gang" unconstitutionally vague. The *Lanzetta* Court did not hold that the use of the term "gang" in a criminal statute made the statute vague. Rather, it held that it made the statute overbroad. *See Lanzetta*, at 457. The fact that a statute is overbroad does not, as a logical matter, necessarily entail that its terms are vague. As used in the Tacoma ordinance, "gang" means a "criminal street gang". *Cf.* Cal. Penal Code § 186-.22(f) (definition of "criminal street gang").

While these are legal definitions, they generally comport with the ordinary usage of those terms. Giving the terms "member" and "gang" a "sensible, meaningful, and practical interpretation," *Spokane v. Douglass, supra* at 180, is proper here since the ordinance is directed toward criminalizing the activities associated with the "open air drug markets" conducted by criminal street gangs.

near a thoroughfare, a place open to the public, or near a public or private place and (3) intentionally solicit, entice, induce or procure another person to exchange, buy, sell, or use illegal drugs or drug paraphernalia. The police report shows that Luvene was in the middle of a street and on a sidewalk for nearly an hour in an area known to be an area of drug trafficking, waving his arms at passing cars; standing by a stopped car and looking around as the person next to him exchanged what looked to be like rock cocaine for paper money with an occupant of the stopped car; and acting as a "lookout" for one of his companions who was smoking a crack pipe. Luvene performed these acts on a public street and in the presence of a police officer.

■ Intent may be inferred from circumstantial evidence. *State v. Caliguri*, 99 Wn.2d 501, 506, 664 P.2d 466 (1983). Luvene was trying to flag down potential customers for illegal drugs. Active members of criminal street gangs typically exchange various drugs for money or sometimes use drugs while one or more persons scout the area for any concealed or approaching police officers. A rational trier of fact could conclude in this case that Luvene intended the natural and probable consequences of his acts. *See Caliguri*. Because petitioner's behavior is consistent with the acts that precede the exchange, sale, and use of illegal drugs and drug paraphernalia by members of criminal street gangs, we find there is sufficient evidence to sustain his conviction for drug loitering.

## VI

Luvene argues that the Tacoma drug loitering ordinance should be invalidated because it contains an inadequate emergency clause. Specifically, Luvene contends that the emergency measure in Tacoma's ordinance circumvents the public's right to referendum contained in article 2, section 1(b) of the Washington Constitution and article 2, sections 2.18-2.25 of the Tacoma City Charter. We find the emergency clause adequate.

■ This court has allowed the Legislature to bypass the people's referendum power through emergency legislation. *State ex rel. Hamilton v. Martin*, 173 Wash. 249, 23 P.2d 1 (1933). Legislative declarations of fact, such as the existence of an emergency, are deemed conclusive unless they are "obviously false and a palpable attempt at dissimulation." *Martin*, 173 Wash. at 257. In determining the truth or falsity of a legislative declaration, the court "will enter upon no inquiry as to the facts, but must consider the question from what appears upon the face of the act, aided by its judicial knowledge." *Martin*, 173 Wash. at 257; *see also State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 778, 380 P.2d 735 (1963).

After hearing public comments, the Tacoma City Council adopted a drug loitering ordinance with the following emergency clause:

> That time is of the essence in this matter because the City's drug problems are increasing rapidly, causing imminent danger to the public health and safety and to property in the area where drug use is taking place; therefore, an emergency is hereby declared to exist, making necessary the passage of this ordinance and its taking effect immediately upon publication.

Tacoma Ordinance 24167, § 2. The Superior Court judge properly noted that there was no evidence of falsehood or dissimulation behind the emergency clause. Decision of the Superior Court, at 3. We find this persuasive.

DORE, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and JOHNSON, JJ., concur.

ANDERSEN, J., concurs in the result.