# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Personal Restraint of | No. 58305-4-II |
|---|---|
| BOBBY LAYTHEN BINFORD, | UNPUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J.—In this personal restraint petition, Bobby Laythen Binford challenges a prison disciplinary infraction for violating WAC 137-25-030(663), "[u]sing physical force, intimidation, or coercion against any person." WAC 137-25-030(1) (Category C-Level 1, 663). He argues that he was deprived of due process, the evidence did not support the guilty finding, and WAC 137-25-030(663) violates the First Amendment to the United States Constitution and article 1, section 3 of the Washington Constitution because it is overbroad. Pers. Restraint Pet. (PRP) at 17-21.[1] This petition is denied.

## FACTS

Binford is currently serving a sentence of life without the possibility of release. Resp. Br. of DOC , Ex. 1, Attach. A at 1. On December 28, 2022, Corrections Officer (CO) Dustin Frisvold issued a serious infraction report asserting that on December 27, Binford had committed two

---

[1] Although the discipline imposed in this instance did not result in a loss of early release credit and Binford has already served his term of cell confinement, this petition is not moot because the infraction is a factor a hearing officer may consider when determining the sanction imposed on any later infraction. WAC 137-28-350(3); *In re Det. of M.K.*, 168 Wn. App. 621, 626, 279 P.3d 897 (2012) (a matter is not moot if collateral consequences flow from the decision at issue).

serious infractions by violating WAC 137-25-030(506), "[t]hreatening another with bodily harm or with any offense against any person or property," and (663), "[u]sing physical force, intimidation, or coercion against any person." Resp. Br. of DOC, Ex. 2, Attach. A at 1-2.

In his statement supporting the infraction report, Frisvold stated that Binford had approached him in the property room and asked to talk about a minor infraction that Frisvold had issued against Binford. Binford told Frisvold that the infraction would prevent him from seeking clemency and asked Frisvold if he could withdraw the infraction. When Frisvold responded that the infraction had been submitted and that Binford would have to present his case at the infraction hearing, Binford became agitated. Binford moved closer to Frisvold in what Frisvold perceived to be a threatening manner and then backed away. Frisvold stated that he reacted by standing up from his seated position "to allow for a defensive position." *Id.* at 1.

Frisvold further alleged that Binford then asked him why he had let other inmates off despite them being "'caught red handed'" but he chose to write up Binford. *Id.* Frisvold stated that he told Binford that he had issued the infraction because he had given Binford several warnings and Binford had not changed his behavior. At that point, Binford pulled up his sleeves and attempted to approach Frisvold in a threatening manner and then backed away again. Frisvold stated that he believed Binford was attempting to physically intimidate him with his body movements and posturing.

Binford then asserted that Frisvold had "'"let all the Rats off."'" *Id.* Frisvold denied this and reminded Binford he had given Binford several warnings before issuing the infraction. Binford responded, emphasizing that he was not an informant or "rat:" "'I ain't no Fucking Rat. No one dares to call me a rat because everyone knows what I have done and [am] capable of doing. I have

been stabbed numerous times.'" *Id.* Binford then showed Frisvold some scars and stated, "'I have also been shot with a shotgun and been all peppered up from the round. I'm not afraid to do what I need to do.'" *Id.*

When Frisvold again stated that the infraction had been submitted and that Binford would have to contest it at the hearing, Binford responded, "'By your actions of not dropping this infraction you're signing my death sentence; you know what that means don't you? By officers pushing inmates that's what involves other Officers in the mix.'" *Id.* Binford then pointed at CCO Derek Anderson, who was also present in the property room, and stated,

> Like in the old days when an inmate was leaving the chow hall and was told to stand for search and the inmate was holding something the inmate would say I can't right now so staff would let them go, then the goon squad would show up 5 minutes later at their house and gaff them up. By Officers pushing inmates like that is what got a SGT killed in front of the mess hall in the past. Do you understand that?

Resp. Br. of DOC, Ex. 2, Attach. A at 1, Attach. C at 1. Frisvold ended the conversation.

Frisvold further noted that in prior conversations Binford had stated, "'I'm not a guy to mess with I'm a professional boxer and can take out anyone in here.'" Resp. Br. of DOC, Ex. 2, Attach. A at 1. Frisvold stated that Binford's behavior and statements were made in an attempt to threaten and intimidate him and the unit staff.

Anderson also provided a statement about the incident that was consistent with Frisvold's description of events. Anderson asserted that Binford's actions and statements were attempts to intimidate Frisvold.

Sergeant Dennis Huggins reviewed a video of the interaction and described Binford's interaction with Frisvold. He explained that Binford was argumentative and closed the distance

between himself and the officers multiple times. Binford also balled his fists and bounced on the balls of his feet.

Binford was allowed to submit a statement from another inmate, Bryce Huber, which explained that he overheard a conversation between Binford and the officers about whether Binford was an informant. Binford asserted that this statement was relevant because it showed that Frisvold had called him a rat.

At the January 30, 2023 infraction hearing, a hearing officer considered the officers' and Huber's written statements and reviewed the video tape. Binford acknowledged that he had received copies of the officers' statements.

After the hearing officer reviewed this evidence, Binford pleaded not guilty to the 506 (threat) and 663 (intimidation) infractions and presented his defense. Binford denied attempting to threaten or intimidate anyone and asserted that he was just responding to being accused of being an informant and that his behaviors were just his "mannerisms." Resp. Br. of DOC, Ex. 3 at 13.

Binford asserted that prior to the incident in the property room, Frisvold had repeatedly asked him to be an informant while in front of other inmates. Binford stated that he had objected to this and that Frisvold had agreed not to ask him again in front of other inmates. But Binford stated that Frisvold had reacted by bullying him and had charged him with a minor infraction and that he had approached Frisvold in the property room to discuss the situation. Binford asserted that during their conversation Frisvold called him an informant or "rat," and he (Binford) had objected. *Id.* at 10. Binford admitted, however, that other than omitting the part where Frisvold called him a rat, Anderson's report was an accurate representation of what occurred.

The hearing officer stated that they had considered the written staff testimony, Binford's plea and statement, and the video. The hearing officer concluded, "I find the staff felt intimidated from the words and actions," and found Binford guilty of the 663 intimidation charge. Resp. Br. of DOC, Ex. 3 at 15. But the hearing officer found "[n]o evidence of threat" and dismissed the 506 threat charge. *Id.* The hearing officer imposed sanctions of 5 days of confinement to his quarters.

At the same hearing, the hearing officer addressed another infraction for violating WAC 137-25-030, "[s]tealing property, possessing stolen property, or possessing another offender's property." WAC 137-25-030(1) (Category D, 555). This incident arose from Sergeant Huggins' property search of Binford's cell that occurred two days after the incident in the property room. The hearing officer found Binford guilty of a lesser general violation of, "[p]ossessing anything not authorized for retention or receipt by an incarcerated individual and/or not issued to an incarcerated individual through approved channels." WAC 137-28-220(1) (053); *see* PRP, Ex. 3 at 2.

Binford appealed the 663 intimidation infraction. The reviewing officer affirmed the hearing officer's decision.

After the 663 infraction was affirmed, Binford filed grievances against Huggins and Frisvold. In the grievance against Huggins, Binford alleged that Huggins had improperly taken his personal property. This grievance was rejected because Binford had been infracted for this behavior and was required to follow the appropriate appeal process. In the grievance against Frisvold, Binford asserted that Frisvold had improperly pressured him to be an informant in front of other inmates and then asserted that Binford was an informant. This grievance was rejected and found to have been filed in retaliation.

Binford then filed this PRP.

ANALYSIS

I. DUE PROCESS AND SUFFICIENCY

Binford challenges the guilty finding on the intimidation infraction.[2] He argues that he was denied due process because the evidence was insufficient to support the guilty finding and the hearing officer failed to provide an adequate written statement of the evidence relied upon. Assuming, but not deciding, that Binford was entitled to these procedural protections,[3] these arguments fail.

This court will not disturb the result of a prison disciplinary proceeding unless action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding so as to work to the offender's prejudice." *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 215, 227 P.3d 285 (2010). A disciplinary proceeding is not arbitrary and capricious if the inmate was afforded the applicable minimum due process protections and the decision was supported by constitutionally sufficient evidence. *Id.* at 215-16.

The evidentiary requirements of due process are satisfied if there is "some evidence" in the record to support a prison disciplinary decision. *Id.* at 216. Inmates are entitled to a written statement of the evidence relied upon and the reasons for the disciplinary action. *Id.* at 215-16.

_____

[2] To the extent portions of Binford's PRP and reply discuss the 053 general infraction and the subsequent grievances, Binford appears to assert that the later infraction charge and the grievances are evidence that DOC staff was bullying him. PRP at 10-11, 13. It does not appear that Binford directly challenges the later infraction and any later related grievances in this petition, so we do not address them. PRP at 1-2, 9-11. To challenge additional infractions or the resolution of grievances, Binford would need to bring a separate petition.

[3] We assume without deciding that Binford had a sufficient liberty interest at stake to support his asserted due process protections.

Binford argues that the evidence was insufficient to support the 663 intimidation infraction. He argues that the evidence shows only that his interaction with Frisvold "was a permissible reaction to being "accused of being a 'RAT'[] (INFORMANT)." PRP at 8. And he contends that other evidence, including the later confiscation and disposal of his personal property, demonstrates that he was being singled out for discriminatory treatment because he refused to act as an informant.

To find Binford guilty of the 663 intimidation violation, the hearing officer had to find that Binford used physical force, intimidation, or coercion against any person. WAC 137-25-030(1) (Category C-Level 1, 663). The officers' statements described Binford physically approaching Frisvold in an aggressive manner more than once and making menacing statements about corrections officers being harmed when Frisvold refused Binford's request to withdraw the prior minor infraction. Binford's explanation that he made the statements out of frustration for being called a "rat" does not explain away the objectively perceived intimidation. Viewed in the prison context, a reasonable person would foresee that Binford's statements and body language would be taken as an attempt to intimidate. Some evidence supported the hearing officer's finding that Binford used intimidation.

Binford further asserts that the hearing officer failed to provide an adequate written statement of the evidence relied upon because the hearing officer did not summarize the security tape's content on the record. But the record shows that Binford was aware that the security video was a recording of what occurred during his conversation with Frisvold in the property room and a description of the video is in our record. And the hearing officer's written statement of the

7

evidence supporting his finding included the fact they relied in part on a review of the security video.

## II. FREE SPEECH

Binford further argues that the 663 intimidation infraction violates his right to free speech because the relevant governing regulation is overbroad. He contends that his reaction to being accused of being an informant was a legitimate exercise of his right to free speech. We disagree.

Free speech rights are protected by both the Washington and federal constitutions. WASH. CONST. art. I, § 5; U.S. CONST. amend. I. This court reviews issues of constitutionality de novo. *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011). This court analyzes an overbreadth argument under article I, section 5 the same as under the First Amendment. *Id.*

A law is overbroad if it "'sweeps within its prohibitions'" a substantial amount of constitutionally protected conduct. *Id.* (quoting *City of Tacoma v. Luvene*, 118 Wn.2d 826, 839, 827 P.2d 1374 (1992)). But an inmate retains only limited free speech rights. *In re Pers. Restraint of Parmelee*, 115 Wn. App. 273, 281, 63 P.3d 800 (2003). An inmate's free speech rights must be consistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Id.* A statute that regulates behavior and not pure speech will not be overturned unless the overbreadth is both real and substantial in relation to the statute's legitimate sweep. *Id.*

The proper inquiry turns on whether a prison regulation is reasonably related to legitimate penological goals. *Id.* at 281-82. We consider four factors. First, we consider whether there is "'a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.'" *Id.* at 282 (quoting *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)). There is no question that preventing inmates from intimidating others is

a legitimate governmental interest, and the ability to sanction inmates who intimidate others is rationally connected to this interest.

Second, this court considers "whether there are 'alternative means of exercising the [constitutional] right that remain open to prison inmates.'" *Id*. (alteration in original) (quoting *Turner*, 482 U.S. at 89-90). Inmates have alternative means of addressing issues with DOC staff apart from intimidation such as filing grievances.

Third, this courts considers "'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id*. (quoting *Turner*, 482 U.S. at 89-90). Permitting speech that is intended to intimidate would have a negative impact on guards and other inmates, reducing prison staff's ability to regulate behavior within the prison and adequately protect other inmates. Permitting intimidating speech would likely put a strain on prison resources.

Fourth, the absence of ready alternatives to the regulation is evidence of the reasonableness of a prison regulation. *Id*. The disciplinary infraction process is the primary means by which DOC staff regulate activity within the prison. The process is designed to ensure order within the prison while honoring inmates' limited due process rights. There are no ready alternatives to the regulation limiting intimidating speech.

In conclusion, because WAC 137-25-030(663) passes the four factor test, we hold that it is reasonably related to legitimate penological concerns and does not violate the First Amendment.

CONCLUSION

We deny the petition.

58305-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Veljacic, A.C.J.

Che, J.