619 So.2d 231 (1993)
Renetha C. WYCHE, Petitioner,
v.
STATE of Florida, Respondent.
No. 77440.
Supreme Court of Florida.
March 25, 1993.
Rehearing Denied May 26, 1993.
*233 James Marion Moorman, Public Defender and Stephen Krosschell, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for petitioner.
Robert A. Butterworth, Atty. Gen. and Peggy A. Quince, Asst. Atty. Gen., Pamela K. Akin, City Atty. of Tampa and Tyron Brown, Asst. City Atty., Tampa, for respondent.
James T. Miller, Jacksonville, amicus curiae, for Florida Ass'n of Criminal Defense Lawyers (FACDL).
BARKETT, Chief Justice.
We have for review Wyche v. State, 573 So.2d 953 (Fla. 2d DCA 1991), in which the district court certified the following question as one of great public importance:
Is section 24-61, City of Tampa Code (1987), facially constitutional?
We have jurisdiction.[1] We answer the certified question in the negative and quash the district court's decision as it relates to the loitering ordinance.
Renetha C. Wyche was arrested after police observed her on a street corner in a skimpy outfit waving to passersby and entering a car that had pulled to the curb. She was convicted of loitering for the purpose of prostitution under section 24-61, City of Tampa Code (1987).[2] On appeal, *234 the district court affirmed the conviction and certified the question of the ordinance's facial constitutionality to this Court.
We find the ordinance unconstitutional because it unnecessarily infringes on constitutional rights; it is too vague because a violation of the law is determined based on law enforcement officers' discretion; it violates substantive due process by punishing innocent activities; and it impermissibly provides a greater penalty than that imposed by state statutes for similar criminal conduct.[3]
The First Amendment to the United States Constitution and article I, section 4 of the Florida Constitution protect the rights of individuals to express themselves in a variety of ways. The constitutions protect not only speech and the written word, but also conduct intended to communicate. See, e.g., Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). Further, the First Amendment and article I, section 5 of the Florida Constitution protect the rights of individuals to associate with whom they please and to assemble with others for political or for social purposes. See, e.g., Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); State v. Dodd, 561 So.2d 263 (Fla. 1990).
When lawmakers attempt to restrict or burden fundamental and basic rights such as these, the laws must not only be directed toward a legitimate public purpose, but they must be drawn as narrowly as possible. See Firestone v. News-Press Publishing Co., 538 So.2d 457 (Fla. 1989). As the United States Supreme Court has noted, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Put another way, statutes cannot be so broad that they prohibit constitutionally protected conduct as well as unprotected conduct. *235 News-Press Publishing Co., 538 So.2d at 459.
When legislation is drafted so that it may be applied to conduct that is protected by the First Amendment, it is said to be unconstitutionally overbroad. See Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla. 1984).[4] This overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially "because it also threatens others not before the court  those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). The doctrine contemplates the pragmatic judicial assumption that an overbroad statute will have a chilling effect on protected expression. City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla. 1985).
The Tampa ordinance, by potentially applying to such conduct as talking and waving to other people, clearly implicates protected freedoms. The ordinance limits the rights of those who have been previously convicted of prostitution to engage in noncriminal routine activities. The ordinance suggests that it is incriminating when a "known prostitute" "repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops, or attempts to stop motor vehicle operators by hailing, waving of arms, or any bodily gesture." Hailing a cab or a friend, chatting on a public street, and simply strolling aimlessly are time-honored pastimes in our society and are clearly protected under Florida[5] as well as federal law. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). All Florida citizens enjoy the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby with no fear of arrest. A formerly convicted prostitute engaging in these activities, however, risks prosecution under the ordinance for loitering, and the risk of arrest certainly would deter the exercise of these rights. See Johnson v. Carson, 569 F. Supp. 974, 979 (M.D.Fla. 1983).
Wyche correctly asserts that the ordinance, which prohibits loitering "in a manner and under circumstances manifesting the purpose of" engaging in acts of prostitution, does not require proof of unlawful intent as an element of the offense. Indeed, the ordinance allows arrest and conviction for loitering under circumstances merely indicating the possibility of such intent, such as beckoning to passersby and waving to motorists, which could be occurring without any intent to engage in criminal activity. Thus, the ordinance affects and chills constitutionally protected activity.
Similar ordinances likewise have been invalidated by numerous other courts because of the ordinances' potential for punishing innocent conduct. See, e.g., Northern Virginia Chapter, ACLU v. City of Alexandria, 747 F. Supp. 324, 328 (E.D.Va. 1990) ("A person may be prosecuted under the ordinance for engaging in such innocuous activity as speaking in a public place for 15 minutes, shaking hands, and exchanging *236 small objects such as business cards or phone numbers on small pieces of paper."); Johnson v. Carson, 569 F. Supp. at 978 ("[A]nyone standing on the street corner repeatedly talking to passers-by, even if they are old friends, could be violating the ordinance."); Coleman v. City of Richmond, 5 Va. App. 459, 364 S.E.2d 239, 243 (1988) ("A hitchhiker could be arrested and convicted because she waved and beckoned to cars though she said not a word regarding solicitation or prostitution."); Christian v. City of Kansas City, 710 S.W.2d 11, 13 (Mo. App. 1986) ("If the circumstances which allegedly reflect one's illicit intentions were held to be well grounded in constitutional jurisprudence, this court would have to condone potential arrests and convictions for ... window shopping, waiting on the corner for a bus, waving to friends, or hailing a taxicab.").
Some state courts have likewise recognized the basic deficiencies of these overbroad ordinances, but have attempted to solve the problem by adopting narrowing constructions in an effort to limit the ordinances' scope to unprotected conduct. These courts have construed the language "manifesting the purpose of" to require evidence of specific intent as an element of the offense. See, e.g., City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992); City of Milwaukee v. Wilson, 96 Wis.2d 11, 291 N.W.2d 452 (1980); City of Akron v. Holley, 53 Ohio Misc.2d 4, 557 N.E.2d 861 (Ohio Mun. 1989). The court in Luvene also found an overt act requirement in the word "manifesting," noting that the culpable mental state must coexist with identifiable, articulable conduct reasonably consistent with unlawful intent. 827 P.2d at 1383. Other courts, however, have invalidated the ordinances even though they included requirements of specific intent to engage in unlawful behavior. Northern Virginia Chapter ACLU; Coleman.
We find that it is impossible to preserve the constitutionality of the Tampa ordinance without effectively rewriting it, and we decline to "legislate" in that fashion. Courts may not go so far in their narrowing constructions so as to effectively rewrite legislative enactments. News-Press Publishing Co., 538 So.2d at 460; Brown v. State, 358 So.2d 16, 20 (Fla. 1978). Even if we were to find that the ordinance could be preserved facially by writing in requirements of specific intent to engage in prohibited activity and sufficient overt activity to clearly manifest that intent, the ordinance still would be subject to unconstitutional application. A series of adjudications limiting the application of the ordinance would be unacceptable because it would result in a chilling effect on protected speech during the pendency of judicial proceedings delineating the contours of the ordinance. Board of Airport Commissioners v. Jews for Jesus, Inc., 482 U.S. 569, 576, 107 S.Ct. 2568, 2573, 96 L.Ed.2d 500 (1987).
Moreover, we also find merit in Wyche's argument that the ordinance is unconstitutionally vague. The principles of the vagueness doctrine address compliance with the concept of due process. Southeastern Fisheries, 453 So.2d at 1353; see also State v. Wershow, 343 So.2d 605, 608 (Fla. 1977) (noting that vague statutes violate article I, section 9 of the Florida Constitution). A statute or ordinance is void for vagueness when, because of its imprecision, it fails to give adequate notice of what conduct is prohibited. Thus, it invites arbitrary and discriminatory enforcement. Art. I, § 9, Fla. Const.; Southeastern Fisheries. As the United States Supreme Court has noted:
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad *237 hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "`steer far wider of the unlawful zone' .. . than if the boundaries of the forbidden areas were clearly marked."
Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972) (citations omitted); see also Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) ("the more important aspect of the vagueness doctrine `is not actual notice, but the other principal element of the doctrine  the requirement that a legislature establish minimal guidelines to govern law enforcement'") (quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)); Wershow, 343 So.2d at 609 ("To force one to act at one's peril is against the very foundation of our American system of jurisprudence").
Several courts reviewing enactments similar to the Tampa ordinance have found them void for vagueness because they left to police the unguided task of differentiating between constitutionally protected street encounters and acts reflecting the state of mind needed to make an arrest. See, e.g., Johnson, 569 F. Supp. at 980; Brown v. Municipality of Anchorage, 584 P.2d 35 (Alaska 1978); Coleman, 364 S.E.2d at 243. The court in Brown noted that the ordinance could mean that "a previously convicted prostitute or panderer could stand on a public street corner or walk slowly down a public sidewalk only at the whim of any police officer." 584 P.2d at 37.
The Tampa ordinance suffers from the same problem. The word "loiter," upon which the entire ordinance depends, is generally defined as:
To be dilatory; to be slow in movement; to stand around or move slowly about; to stand idly around; to lag behind; to linger or spend time idly.
Black's Law Dictionary 942 (6th ed. 1991). The United States Supreme Court has made clear that loitering, wandering, sauntering, and other idle activities are not, in and of themselves, unlawful. Papachristou, 405 U.S. at 164, 92 S.Ct. at 844. The question then is whether the additional language in the ordinance qualifies the word "loiter" sufficiently to satisfy the due process clauses of both the United States Constitution and the Florida Constitution. We find that it does not. Many innocent people saunter on the streets and call to friends. The list of circumstances guiding law enforcement officers is not exhaustive and leaves much to individual officers' discretion. The ordinance encourages the arbitrary and discriminatory enforcement of the law and therefore, is unconstitutional. Id. at 170, 92 S.Ct. at 847.
The ordinance also violates substantive due process because, as we have discussed, it may be used to punish entirely innocent activities. Art. I, § 9; State v. Saiez, 489 So.2d 1125, 1129 (Fla. 1986). As drafted, the ordinance without question "unjustifiably transgresses the fundamental restrictions on the power of government to intrude upon individual rights and liberties." State v. Walker, 444 So.2d 1137, 1138 (Fla. 2d DCA), adopted, 461 So.2d 108 (Fla. 1984). Thus, it is impossible to say that the ordinance bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary, or oppressive. Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla. 1974).
Finally, the ordinance is invalid because its maximum penalty of six months' imprisonment is greater than the penalty imposed by state statutes regulating similar conduct. See Thomas v. State, 614 So.2d 468 (Fla. 1993). Florida's loitering statute, section 856.021, Florida Statutes (1987), and its prostitution and solicitation statute, section 796.07(3)(b) (1987), create second-degree misdemeanors calling for a maximum imprisonment of sixty days in jail. Sections 856.021(3), 796.07(5), 775.082(4)(b), Fla. Stat. (1987). While the city's ordinance is not identical to either of these statutes, it is directed at the same or less *238 serious conduct. Although municipalities and the legislature may legislate concurrently in areas not expressly preempted to the state, a municipality's concurrent legislation may not conflict with state law. City of Miami Beach v. Rocio Corp., 404 So.2d 1066, 1069 (Fla. 3d DCA), review denied, 408 So.2d 1092 (Fla. 1981). Conflict arises when municipalities punish misconduct more severely than is permitted by state statutes. Thomas; see also Rinzler v. Carson, 262 So.2d 661, 668 (Fla. 1972) (ordinance must not conflict with any controlling provision of state statute); Edwards v. State, 422 So.2d 84, 85 (Fla. 2d DCA 1982) (an ordinance penalty cannot exceed that of a state law).
Accordingly, we answer the certified question in the negative, quash that portion of the district court's decision relating to the loitering ordinance, and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, J., concurs.
KOGAN, J., concurs with an opinion.
HARDING, J., concurs in result only with an opinion.
McDONALD, J., dissents with an opinion, in which OVERTON and GRIMES, JJ., concur.
KOGAN, Justice, concurring.
I concur with the majority except for its statement that the ordinance here cannot permissibly be narrowed by judicial construction. In Garden v. Frier, 602 So.2d 1273 (Fla. 1992), five members of this Court not only rewrote a statute but literally added to that statute seven full paragraphs of new language along with seven more paragraphs of material contained in footnotes. Id. at 1275-77 & 1275-77 nn. 3-9. That being our more recent precedent on this question, I cannot agree that the narrowing construction suggested by Justice McDonald's dissent would constitute impermissible judicial legislation.
However, I agree with the majority that there is no possible narrowing construction sufficient to cure this ordinance's numerous defects. To my mind the primary defect is the statute's facial vagueness in the use of the word "loitering"  an error that literally opens the door to a cascading series of further constitutional violations, including infringement of equal protection. Persons guided only by the plain language of the ordinance may view it is an invitation to selective arrests or prosecutions. Discretion is not sufficiently guided by the one document that alone is likely to be consulted prior to arrest  the loitering ordinance itself  and judicial construction cannot possibly cure this error.
In so concluding I am heavily influenced by the historical context from which loitering statutes and ordinances emerged. Indeed, I do not believe that legal concepts can be divorced from their own histories merely by a narrowing construction. For example, I think few would suggest that a law authorizing "segregation according to race" could be rendered innocuous merely by construing away whatever discriminatory impact that law might have. Such a law should be stricken on its face, completely nullified.
To my mind, law must be as sensitive to its own history as it is to its present reality. And the history underlying the species of ordinance or statute at issue here is not much more pristine than Florida's longoverturned segregation laws.
In our legal system the concept of loitering was derived from earlier laws prohibiting vagrancy. Such laws originated some five centuries ago as a rather barbaric means by which the upper classes of England exercised social control over the landless poor. William O. Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1, 5-6 (1960).
Most particularly, the old vagrancy laws were used as a means of controlling the laboring classes, making sure they remained where their work was most useful to the upper classes. To leave the factory, the workhouse, or the fields was by definition to become vagrant. In this way, the former serfs of England were "kept in their place" by the law itself. Id. Over time, vagrancy also evolved into the closely *239 related concept of loitering, and was imported into the United States. Some state codes expressly equated loitering with vagrancy. Black's Law Dictionary 1549 (6th ed. 1991) (describing Kansas Criminal Code). The taint of this history has not entirely dissipated.
Until well into this century, loitering and vagrancy statutes in the United States retained much of their medieval character as tools of injustice and oppression. In this country, however, the objects of the statutes have been minorities, the homeless, and the powerless. These were the ones being "kept in their place" by the law  often for reasons that had as much to do with social prejudice as economic exploitation. Anyone thought to be undesirable could be the target of a charge of loitering or vagrancy, just as the sharecropper who left the tenant farm thereby became a "vagrant" or a "loiterer." Even today, this ghost of bigotry lingers.
In December 1990, the Florida Supreme Court Racial and Ethnic Bias Study Commission issued a report after conducting extensive hearings throughout Florida. The report details the problem as it exists today:
The testimony [at commission hearings] shows that African-Americans perceive the existence of a pattern of abuse, use of excessive force, harassment, and undue infringement of the basic liberties and mobility of young African-American males... .
These comments from minority citizens are exemplary of allegations made to the Commission every place it met:
 From a young African-American father, with his two sons in tow: "I have the same problems that a lot of other people ... have. I drive through the community and I get stopped by the police. I'm a law-abiding citizen. I've been stopped about six times, and I haven't done anything."
 From an African-American civil engineer working on a project for the city: "I was pulled over at night and was told, `You are not supposed to be in this part of town this time of day'."
 From a public defender, representing both white and non-white clients: "There exists in this community a black male profile... . You are likely to be picked up, questioned, and possibly arrested just because you are a black male. This will not happen to white males in the community."
Law cannot afford to be mindless of reality. The reality here is the racial and ethnic animosity that has conjured riots in our cities and spun a pall of hatred and distrust that we still struggle to dispel. We as a modern state must recognize that misapplication of our laws has contributed to these problems. In particular, we must guard against laws that promote discrimination more than justice. Continued use of words such as "loitering" and "vagrancy" carry that risk, if only because of the sorry history that added these words to the legal lexicon.
Legislative bodies throughout this state would do well to consider that words such as "loitering" or "vagrancy" are every bit as dated as "Jim Crow," "segregation," and "interposition." As the majority notes, loitering laws also are utterly unnecessary, because the precise same effect (but absent the constitutional defect) can be obtained by resorting to established criminal law concepts such as the law of attempts and solicitations.
While I otherwise concur with the majority, I do not find that Justice McDonald's suggested narrowing construction in and of itself constitutes impermissible judicial legislation. See Garden. Rather, I believe that Justice McDonald's approach, while permissible, simply will not cure this ordinance's defects and particularly its chilling effect.
HARDING, Justice, concurring in result only.
I concur with the majority that the ordinance is unconstitutional because of vagueness. As the majority points out, a vague statute or ordinance raises two problems. Vague laws fail to give adequate notice of what conduct is prohibited. This imprecision in turn invites arbitrary and discriminatory *240 enforcement. Majority op. at 236. I find that the ordinance at issue here fails on both counts.
I also find that the ordinance is invalid because it imposes a greater penalty than the state statute regulating similar conduct. The dissent suggests that "[b]efore an arrest may be made under the ordinance, the police must establish probable cause that the unlawful intent to engage in prostitution-related activities exists." Dissenting op. at 24. If interpreted in this manner, the ordinance clearly proscribes conduct already proscribed by the state prostitution and solicitation statute. See § 796.07, Fla. Stat. (1987). The maximum penalty for violating the ordinance (six months' imprisonment) exceeds the maximum penalty for violating the statute (sixty days in jail). Thus, the ordinance fails because it conflicts with the statute.
In my judgment, the construction urged by the dissent, reading in specific intent and probable cause and reducing the penalty, is so restrictive that it would require a judicial rewriting of the ordinance, thus infringing on the legislative prerogative of the Tampa City Council. I concur with the majority that we should decline to "legislate" in this fashion.
While it is not the responsibility of the judiciary to determine which laws are necessary and which are not, I find that invalidating this ordinance will do no harm as there is really no need for the ordinance. Even if the ordinance is rewritten to overcome the vagueness problem, the ordinance will still address the same conduct that is already regulated by state statute. The overt conduct needed to arrest a person for loitering for the purpose of solicitation would also justify an arrest under the state solicitation statute.
McDONALD, Justice, dissenting.
In addition to serving a valid and useful public purpose, the Tampa ordinance prohibiting loitering for certain criminal purposes is sufficiently narrow to satisfy the constitutional concerns raised by the majority. The ordinance is constitutional on its face, and I regret that this Court does not feel compelled to uphold it.
In Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the Supreme Court struck down a Jacksonville loitering ordinance for vagueness and overbreadth because it, unlike the Tampa ordinance, proscribed loitering and nothing more. Subsequently in State v. Ecker, 311 So.2d 104 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975), this Court upheld the state loitering statute because it had been amended to add the requirement that the loitering occur "in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." Section 856.021, Fla. Stat. (1973). Similarly, the majority of jurisdictions that have addressed the constitutionality of laws prohibiting loitering for the purpose of engaging in unlawful conduct have upheld such laws.[6]
An ordinance is overbroad when it affects a substantial amount of constitutionally protected activities as well as illegal unprotected activities. Kolender v. Lawson, 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983); Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Further, "the First Amendment needs breathing space and ... statutes attempting to restrict *241 or burden the exercise of First Amendment rights must be narrowly drawn." Broadrick v. Oklahoma, 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). Challenges based on overbreadth have been upheld where "rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations." Id. at 612, 93 S.Ct. at 2916.
However, because the overbreadth doctrine allows a departure from traditional rules of standing and results in the striking down of statutes or ordinances based on conduct that may have been punishable, it is "strong medicine," and, thus, an ordinance or statute must be substantially overbroad to be stricken. Id. at 613, 93 S.Ct. at 2916; see also New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Facial overbreadth is to be employed as a last resort, and it is not to be applied when a limiting construction can be placed on the statute or ordinance to narrow it and remove the threat to constitutionally protected expression. Broadrick, 413 U.S. at 613, 93 S.Ct. at 2916.
I specifically disagree with the majority's assertion that the ordinance, which prohibits loitering "in a manner and under circumstances manifesting the purpose of" engaging in acts of prostitution, does not require evidence of unlawful intent as an element of the offense. Several courts in reviewing similar ordinances have construed the language "manifesting the purpose of" to require evidence of specific intent as an element of the offense. City of Akron v. Holley, 53 Ohio Misc.2d 4, 557 N.E.2d 861 (Ohio Mun. 1989); In re D., 27 Or. App. 861, 557 P.2d 687 (1976) review denied, 278 Or. 1 (1977), appeal dismissed 434 U.S. 914, 98 S.Ct. 385, 54 L.Ed.2d 271 (1977); City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992); City of Milwaukee v. Wilson, 96 Wis.2d 11, 291 N.W.2d 452 (1980). "Manifest" is defined as "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden." Black's Law Dictionary 867 (5th ed. 1979). Further, "purpose" means "that which one sets before him to accomplish; an end, intention, or aim, object, plan, project." Id. at 1112 (emphasis added). Thus, it is reasonable to construe the ordinance as requiring clear and unmistakable evidence of the loiterer's specific intent to engage in unlawful conduct. Because this Court has the general "duty to avoid a holding of unconstitutionality if a fair construction of the legislation" will allow us to do so, Ecker, 311 So.2d at 109, I believe that this Court is obligated to uphold the Tampa ordinance as facially constitutional.
Loitering ordinances and statutes that require criminal intent have been upheld by a majority of states. E.g., Lambert v. City of Atlanta, 242 Ga. 645, 250 S.E.2d 456 (1978); State v. Armstrong, 162 N.W.2d 357 (Minn. 1968); State v. Evans, 73 N.C. App. 214, 326 S.E.2d 303 (1985); Luvene; City of Seattle v. Slack, 113 Wash.2d 850, 784 P.2d 494 (1989); Wilson. The scienter requirement limits the ordinance to activities for the purpose of prostitution, which are not constitutionally protected, thereby ensuring that the ordinance narrowly applies to unprotected criminal activity. With specific intent as an element of the offense, the ordinance could not be used to punish a hitchhiker for the mere act of waving or beckoning to cars on the street, nor could it be used to punish the previously convicted prostitute for window shopping. Contrary to the majority's rationale, construing the ordinance to contain a scienter requirement does not necessitate a "rewriting" of the ordinance.
Before an arrest may be made under the ordinance, the police must establish probable cause that the unlawful intent to engage in prostitution-related activities exists by pointing to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Thus, the requirement of probable cause distinguishes the arrestee's conduct from innocent activity. As with all other conduct, individuals are free to exercise their First Amendment rights as long as there is no probable cause for an *242 officer to believe a crime has been or is being committed.
While the ordinance might be unconstitutionally applied to innocent conduct in certain circumstances, that is not a sufficient basis on which to hold the ordinance facially unconstitutional. Ecker, 311 So.2d at 110. Overbreadth claims "have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." Broadrick, 413 U.S. at 613, 93 S.Ct. at 2917. The Supreme Court has noted that
facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct  even if expressive  falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect  at best a prediction  cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.
Id. at 615, 93 S.Ct. at 2917-18. Because the Tampa ordinance requires the specific intent to commit or solicit prostitution and such intent must be manifested by specific, articulable facts rising to the level of probable cause, it does not reach constitutionally protected conduct and is sufficiently narrow to withstand a challenge of overbreadth. Claims of unconstitutional application of the ordinance should be addressed on a case-by-case basis. See id.
As the majority points out, an ordinance or statute is unconstitutionally vague if it fails to set forth the prohibited conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." Kolender, 461 U.S. at 357, 103 S.Ct. at 1858. If proof of actual intent is required, the ordinance clearly articulates prohibited conduct. The scienter requirement would mitigate the ordinance's vagueness by avoiding "those consequences to the accused which may otherwise render a vague or indefinite statute invalid." Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945). "[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." Id. at 102, 65 S.Ct. at 1036. The Tampa ordinance contains no ambiguity, and the public is duly notified that loitering for the purpose of engaging in certain unlawful activity is prohibited.
The majority opinion expresses a specific concern that the ordinance leaves the police the "unguided task of differentiating between constitutionally protected street encounters and acts reflecting the state of mind needed to make an arrest." Majority op. at 237. I disagree because the law does not require that the circumstances justifying probable cause consist of illegal conduct. To the contrary, the Supreme Court has noted that "`innocent behavior will frequently provide the basis for a showing of probable cause,' and that `[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" United States v. Sokolow, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (quoting Illinois v. Gates, 462 U.S. 213, 243-244, n. 13, 103 S.Ct. 2317, 2334-2335, n. 13, 76 L.Ed.2d 527 (1983)). Circumstantial evidence is often used to determine an actor's evil intent and to punish accordingly.
The requirement of probable cause that a crime has been or is about to be committed insures that the police do not use the ordinance as a means of discriminatory enforcement or harassment of specified individuals. An officer cannot base an arrest *243 on the subjective determination that the defendant has an unlawful intent. Clearly, the ordinance would be unconstitutionally applied if an arrest was made on the mere suspicion that the loiterer's purpose was to engage in unlawful conduct. See Papachristou, 405 U.S. at 169, 92 S.Ct. at 847 (1972).
The majority adopts Wyche's argument that the maximum six-month penalty under the ordinance is illegal because it provides for greater punishment than that provided for the same offense under the loitering statute, section 856.021, Florida Statutes (1989), and the statute prohibiting prostitution and solicitation, subsection 796.07(5), Florida Statutes (1989). As a general rule, where the ordinance prohibits conduct not precisely identical to the conduct covered by the state statute, even though it might constitute a violation of state law, the ordinance penalty may be greater. Id.; see also Browning v. City of Tampa, 101 So.2d 365 (Fla. 1958). Unlike the Tampa ordinance, the loitering statute does not require the specific intent to engage in unlawful activities. Thus, because the ordinance prohibits a greater offense, it is not in conflict with the statute. See Browning. In contrast to the statute on prostitution and solicitation, the ordinance makes the additional requirement that the unlawful conduct take place "in or near any thoroughfare or place open to the public." It is reasonable to consider criminal activity taking place on public streets in full view of citizens and individuals, such as minors, who may be endangered or negatively influenced by such acts, as constituting a more severe offense than those crimes committed elsewhere. Thus, the ordinance proscribes conduct distinct from that covered by the state statute. Id.
Even in light of the majority's finding that the six-month penalty is improper because it is greater than the penalty imposed by the state statute, I do not believe that the entire ordinance must fail. Where the provisions of an ordinance are separable, the whole ordinance should not be declared void because of the invalidity of a part of the ordinance. Lysaght v. City of New Smyrna Beach, 159 So.2d 869 (Fla. 1964). "The principle of invalidation of a whole ordinance has no application to an ordinance in which the improper matters can be distinguished clearly and separated from those matters properly included in the ordinance." Id. at 870. In the instant case, the penalty provision is clearly distinguishable from the part of the ordinance that makes loitering an unlawful act. Therefore, I believe the appropriate action would be to preclude the imposition of a penalty greater than that imposed by the state, while leaving the rest of the ordinance intact.
In addition to the constitutional arguments that exist for upholding the ordinance, I also believe that there is a strong and worthy policy interest in allowing the City of Tampa to prohibit conduct that is not constitutionally protected. Prior to enacting this ordinance, the City evidently recognized that people were loitering in public areas for the purpose of engaging in illegal acts, such as prostitution or lewd or indecent acts. The City has an obligation to protect its streets and its citizenry from the harm that frequently results from this type of activity, and the City responded by enacting an ordinance aimed at preventing the harm. As long as the City was acting within its authority and within constitutional parameters, as it was in adopting this ordinance, I believe that we should defer to the City's determination that criminal loitering should be prohibited.
For these reasons, I respectfully dissent and would answer the certified question in the affirmative.
OVERTON and GRIMES, JJ., concur.
NOTES
[1] Art. V, § 3(b)(4), Fla. Const. Ms. Wyche died before this Court determined jurisdiction. We granted review because the case involves a certified question of great public importance.
[2] The ordinance provides as follows:

A. It is unlawful for any person in the city to:
.....
10. Loiter, while a pedestrian or in a motor vehicle, in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act. Among the circumstances which may be considered in determining whether this purpose is manifested are: that such person is a known prostitute, pimp, sodomist, performer of fellatio, performer of cunnilingus, masturbator for hire or panderer and repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation, or repeatedly stops, or attempts to stop motor vehicle operators by hailing, waving of arms or any bodily gesture for the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person the opportunity to explain this conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.
a. For the purpose of this subsection 10, a "known prostitute, pimp, sodomist, performer of fellatio, performer of cunnilingus, masturbator for hire or panderer is a person who, within one (1) year previous to the date of arrest for violation of this subsection, had within the knowledge of the arresting officer been convicted of violating any ordinance of the city or law of any state defining and punishing acts of soliciting, committing or offering or agreeing to commit prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act.
b. For the purpose of this subsection 10 and section 24-63, "any person" shall also include panderers or solicitors of sexual acts, commonly referred to as "johns" or "tricks," who loiter in a manner and under circumstances manifesting the purpose of participating in, procuring, purchasing or soliciting any sexual act for hire made illegal by state law. Among the circumstances which may be considered in determining whether this purpose is manifested are: that such person, while pedestrian or in a motor vehicle, repeatedly beckons to, attempts to stop, engages or attempts to engage in conversation with any person by hailing, waving of arms or any bodily gesture for the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act.
§ 24-61" (emphasis added).
[3] We decline to address the other issues raised by Wyche.
[4] The overbreadth doctrine continues to be confused with the concept of vagueness, despite efforts by this Court to distinguish the two. See State v. Saiez, 489 So.2d 1125, 1126-27 (Fla. 1986); Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984). As Justice Overton noted in Southeastern Fisheries,

[t]oo often, courts and lawyers use the terms "overbroad" and "vague" interchangeably. It should be understood that the doctrines of overbreadth and vagueness are separate and distinct. The overbreadth doctrine applies only if the legislation "is susceptible of application to conduct protected by the First Amendment." The vagueness doctrine has a broader application, however, because it was developed to assure compliance with the due process clause of the United States Constitution.
453 So.2d at 1353 (citations omitted).
[5] Many of the activities implicated by the ordinance fall into the realm of personal autonomy that is protected by article I, section 23 of the Florida Constitution. In re Guardianship of Browning, 568 So.2d 4, 9-10 (Fla. 1990).
[6] See People v. Superior Court, 46 Cal.3d 381, 250 Cal. Rptr. 515, 758 P.2d 1046 (1988); Lambert v. City of Atlanta, 242 Ga. 645, 250 S.E.2d 456 (1978); State v. Armstrong, 282 Minn. 39, 162 N.W.2d 357 (1968); People v. Smith, 44 N.Y.2d 613, 407 N.Y.S.2d 462, 378 N.E.2d 1032 (1978); People v. Pagnotta, 25 N.Y.2d 333, 305 N.Y.S.2d 484, 253 N.E.2d 202 (1969); In re D., 27 Or. App. 861, 557 P.2d 687 (1976), review denied, 278 Or. 1 (1977), appeal dismissed 434 U.S. 914, 98 S.Ct. 385, 54 L.Ed.2d 271 (1977); City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992); City of Seattle v. Slack, 113 Wash.2d 850, 784 P.2d 494 (1989); City of Seattle v. Jones, 79 Wash.2d 626, 488 P.2d 750 (1971); City of Milwaukee v. Wilson, 96 Wis.2d 11, 291 N.W.2d 452 (1980). Contra Brown v. Municipality of Anchorage, 584 P.2d 35 (Alaska 1978); People v. Gibson, 184 Colo. 444, 521 P.2d 774 (1974).