LEVINE, J.
The issue presented for our review is whether a municipal ordinance criminalizing “loitering with intent to commit prostitution” is facially unconstitutional. We find that the ordinance is overbroad and vague, and as such, we affirm the trial court which correctly found this ordinance unconstitutional.
Appellee was charged with violating the City of West Palm Beach ordinance regarding “Loitering with the Intent to Commit Prostitution.”[1] In this case, a law enforcement officer from the West Palm Beach Police Department observed appel-lee “standing in an area known for prostitution activity dressed as a woman.” When asked by the officer what appellee was doing in the area, appellee replied that he was “waiting for his ride.”[2] Appellee was charged with violating the city’s ordinance prohibiting “loitering with the intent to commit prostitution.” Appellee moved to dismiss the charge claiming that the *726 ordinance was facially unconstitutional. The county court granted appellee’s motion to dismiss. The county court certified that the issue emanating from this case was of great public importance pursuant to Florida Rule of Appellate Procedure 9.160. This court accepted jurisdiction pursuant to that rule. The city’s appeal ensues.
We review the facial constitutionality of a municipal ordinance under the de novo standard. State v. J.P., 907 So.2d 1101, 1107 (Fla.2004).
We begin our analysis by reviewing the seminal cases: Wyche v. State, 619 So.2d 231 (Fla.1993), and Holliday v. City of Tampa, 619 So.2d 244 (Fla.1993).
In Wyche, the Florida Supreme Court found that the City of Tampa’s ordinance prohibiting loitering for the purpose of prostitution was unconstitutional as “too vague because a violation of the law is determined based on law enforcement officers’ discretion” and as overbroad by “implicating] protected freedoms” such as “talking and waving to other people.” 619 So.2d at 234-35. The Tampa ordinance in Wyche provided that it was unlawful for any person to “[l]oiter, while a pedestrian or in a motor vehicle, in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act.” Id. at 233 n. 2. The ordinance also listed “circumstances” which law enforcement may consider when determining whether this “purpose is manifested.”[3]
The Florida Supreme Court stated:
The ordinance limits the rights of those who have been previously convicted of prostitution to engage in noncriminal routine activities. The ordinance suggests that it is incriminating when a “known prostitute” “repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops, or attempts to stop motor vehicle operators by hailing, waving of arms, or any bodily gesture.” Hailing a cab or a friend, chatting on a public street, and simply strolling aimlessly are time-honored pastimes in our society and are clearly protected under Florida as well as federal law. All Florida citizens enjoy the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby with no fear of arrest.
Id. at 235 (citation and footnote omitted).
The court concluded that
the ordinance, which prohibits loitering “in a manner and under circumstances manifesting the purpose of’ engaging in acts of prostitution, does not require proof of unlawful intent as an element of the offense. Indeed, the ordinance allows arrest and conviction for loitering under circumstances merely indicating the possibility of such intent, such as beckoning to passersby and waving to motorists, which could be occurring without any intent to engage in criminal activity. Thus, the ordinance affects *727 and chills constitutionally protected activity.

Id.

Appellant argues that the West Palm Beach ordinance does not contain the same infirmities as the Tampa ordinance in Wyche, since the West Palm Beach ordinance contains the additional requirement that “[t]he violator’s conduct must be such as to constitute activity which demonstrates a specific intent to induce, entice, solicit or procure another to commit an act of prostitution.”
We find, however, that the ordinance in this case, just like in Wyche, is unconstitutionally overbroad. “The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment’s vast and privileged sphere” and an enactment “is unconstitutional on its face if it prohibits a substantial amount of protected expression.” Ashcroft v. Free Speech Coal., 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). The language in this ordinance does not require that the conduct proscribed be with specific intent; rather the language merely restricts conduct which “demonstrates” a “specific intent.” Thus, criminalization of the conduct outlawed in the present case could infringe on constitutionally protected activities since an arresting police officer could rely purely on conduct which “demonstrates” to the officer a “specific intent” to entice or solicit another to commit an act of prostitution. Constitutionally protected conduct like waving at passersby and sauntering down a street could be interpreted by officers as constituting conduct which evinces a “specific intent” to solicit prostitution.
The Florida Supreme Court, on the same day it issued Wyche, issued Holliday v. City of Tampa, 619 So.2d 244 (Fla.1993), which invalidated an ordinance making it “unlawful for any person to loiter in a public place in a manner and under circumstances manifesting the purpose of illegally using, possessing, transferring or selling any controlled substance.” Id. at 244 n. 2. This drug loitering ordinance contained another provision which listed circumstances that could be considered when determining if that purpose had been manifested.[4]
Similar to West Palm Beach’s ordinance here, the ordinance in Holliday contained the additional requirement that “the person’s affirmative language or conduct must be such as to demonstrate by its express or implied content or appearance a specific intent to induce, entice, solicit or procure another to illegally possess, transfer or buy a controlled substance.” Id. at 245 n. 2. The Florida Supreme Court, in Holliday, concluded that “[b]ased on the authority of Wyche, we find that the ordinance at issue in this case is unconstitutional” since, among various conclusions, the ordinance was overbroad and vague. Id. at 245.
We find that the ordinance’s language in Holliday, allowing consideration of the circumstances enumerated to determine if *728 one’s language or conduct “demonstrate[d]” the “specific intent” to solicit another to engage in illegal drug activity, is structurally similar to the ordinance’s language in the present case, under which law enforcement may also consider enumerated circumstances in determining whether a loiterer “demonstrates” a specific intent to solicit another to commit an act of prostitution. Just like in Holliday, where the officer’s ability to rely on enumerated conditions demonstrating specific intent could not save the ordinance from constitutional deficiency, we find that the present ordinance is similarly unconstitutionally overbroad.
We also find the ordinance to be unconstitutionally vague. The doctrinal prohibition of vagueness “was developed to assure compliance with the due process clause of the United States Constitution.” Se. Fisheries Ass’n v. Dep’t of Natural Res., 453 So.2d 1351, 1353 (Fla.1984).
 For an enactment not to be unconstitutionally vague, it “must provide persons of common intelligence and understanding adequate notice of the proscribed conduct.” State v. Catalano, 104 So.3d 1069, 1075 (Fla.2012). “The objection of vagueness is two-fold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact.” Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (citation omitted).
As Justice George Sutherland stated:
That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.
Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).
The Justice concluded:
The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.
Id. at 393, 46 S.Ct. 126 (citation omitted).
Further, if a statute “fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests” then the enactment “may be impermissibly vague.” City of Chicago v. Morales, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).
The Florida Supreme Court in Wyche found the Tampa ordinance to also violate the proscription against impermissibly vague enactments. The court found the ordinance to be vague, especially as it related to the definition of loitering. The supreme court determined:
The question then is whether the additional language in the ordinance qualifies the word “loiter” sufficiently to satisfy the due process clauses of both the United States Constitution and the Flor *729 ida Constitution. We find that it does not. Many innocent people saunter on the streets and call to friends. The list of circumstances guiding law enforcement officers is not exhaustive and leaves much to individual officers’ discretion. The ordinance encourages the arbitrary and discriminatory enforcement of the law and therefore, is unconstitutional.
619 So.2d at 237.
Similarly, in the present case, we find that the ordinance allows for arbitrary enforcement by law enforcement. The additional language that the violator’s conduct must be activity which “demonstrates” a specific intent does not vitiate the fact that much is left to individual officers’ discretion. The individual officer may still determine subjectively if waving at passersby or strolling down the street “demonstrates” the specific intent to violate the ordinance.
We decline to read the ordinance’s language of “demonstrates a specific intent” as an actual requirement that the violator must specifically intend to solicit another to commit an act of prostitution. If the city commission had meant an actual specific intent requirement, it would have specifically written that into the ordinance. We will not read language into the ordinance, nor rewrite it. “Courts may not go so far in their narrowing constructions so as to effectively rewrite legislative enactments.” Id. at 236.
In conclusion, we find the ordinance to be overbroad and vague, and therefore we affirm the lower court and find the ordinance unconstitutional.

Affirmed.

WARNER and GERBER, JJ., concur.

. Chapter 54, Article X, Section 54-332 of the City of West Palm Beach Code of Ordinances. In pertinent part, the ordinance provides:
Sec. 54-332. — Prohibited acts.
No person shall loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are the following: that such person is a known prostitute; that such person frequents, either on foot or in a motor vehicle, a known area of prostitution; and that such person repeatedly beckons to, stops, or attempts to stop, or engages passersby in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms, or any other bodily gesture for the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution. The violator’s conduct must be such as to constitute activity which demonstrates a specific intent to induce, entice, solicit or procure another to commit an act of prostitution. No arrest shall be made for a violation of this section unless the arresting officer first affords such persons an opportunity to explain such conduct, and no one shall be convicted of violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose.
The ordinance provides definitions for several of its terms:
Sec. 54-331. — Definitions.
The following words, terms and phrases, when used in this article shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:
Known area of prostitution means a public place where within two years previous to the date of arrest for violation of this article, and within the knowledge of the arresting officer, a person has been convicted of, or arrested for, violating any ordinance of the city or law of the state defining and punishing acts of soliciting, committing, or offering or agreeing to commit an act of prostitution.
Known prostitute means a person who within two years previous to the date of arrest for violation of this article has, within the knowledge of the arresting officer, been convicted in a court of competent jurisdiction of an offense involving prostitution, or who within two years previous to the date of arrest for violation of this article has, within the knowledge of the arresting officer, been arrested for an offense involving prostitution, or who has made admissions or statements to the arresting officer that such person does engage in acts of prostitution.
Public place means an area generally visible to public view and includes streets, sidewalks, bridges, alleys, plazas, parks, driveways, parking lots, automobiles (whether moving or not), and buildings open to the general public, including those which serve food or drink, or provide entertainment, and the doorways and entrances in buildings or dwellings and the grounds enclosing them.

. We take these facts from appellee’s motion to dismiss.

. Under the Tampa ordinance in Wyche, law enforcement was permitted to consider:
that such person is a known prostitute, pimp, sodomist, performer of fellatio, performer of cunnilingus, masturbator for hire or panderer and repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops, or attempts to stop motor vehicle operators by hailing, waving of arms or any bodily gesture for the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act.
Id. at 233 n. 2

. In determining whether the loiterer’s requisite purpose was manifested, law enforcement could consider that "the person is a known illegal user, possessor or seller of controlled substances, or the person is at a location frequented by persons who illegally use, possess, transfer or sell controlled substances,” that "the person repeatedly beckons to, stops, attempts to stop or engage in conversation with passers-by, whether such passers-by are on foot or in a motor vehicle, for the purpose of inducing, enticing, soliciting or procuring another to illegally possess, transfer, or buy any controlled substances,” and that "the person repeatedly passes to or receives from passers-by” currency or items "for the purpose of inducing, enticing, soliciting or procuring another to illegally possess, transfer or buy any controlled substance.” Holliday, 619 So.2d at 245 n. 2.